Case 7:19-cv-00161   Document 35   Filed on 08/18/20 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
August 18, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 7:19-CV-161 |
| § | |
| JP TAO, LLC; dba BREEZE § | |
| RESTAURANT LOUNGE; dba BREEZE § | |
| LOUNGE, *et al*, § | |
| § | |
| Defendants. § | |

# ORDER AND OPINION

The Court now considers the motion for default judgment[1] filed by J&J Sports Productions, Inc. ("Plaintiff") against Defendant JP Tao, LLC. The Court also considers the notice of dismissal as to Defendant Irene Mireles[2] filed by Plaintiff. After duly considering the motion, record, and relevant authorities, the Court hereby **DISMISSES** Irene Mireles as a Defendant in this case and **GRANTS** Plaintiff's motion for default judgment against Defendant JP Tao, LLC.

### I.  BACKGROUND

Plaintiff brings this suit under the Federal Communications Act of 1934[3] for an alleged May 7, 2016 broadcast of *Saul Alvarez v. Amir Khan*, WBC World Middleweight Championship Fight Program at a McAllen, Texas establishment, Breeze Lounge a/k/a Breeze Restaurant Lounge.[4] Plaintiff is a broadcast corporation that alleges it had the exclusive right to sublicense

---

[1] Dkt No. 34.
[2] Dkt. No. 33.
[3] *See* 47 U.S.C. §§ 553, 605.
[4] Dkt. No. 1 p. 2, ¶ 1. The establishment is identified in Plaintiff's complaint as Breeze Restaurant Lounge and Breeze Lounge, "having its business mailing address as 2005 W. Nolana Avenue, McAllen, Texas 78504." *Id.* ¶ 2.

this telecast.[5] Plaintiff timely filed its complaint on May 6, 2019, naming the following Defendants: (1) JP Tao, LLC, individually, and d/b/a Breeze Restaurant Lounge, and d/b/a Breeze Lounge; (2) Irene Mireles, individually, and d/b/a Breeze Restaurant Lounge, and d/b/a Breeze Lounge; (3) Jong Mi Park a/k/a John Mi Park, individually, and d/b/a Breeze Restaurant Lounge, and d/b/a Breeze Lounge; and (4) Gerardo Arcellano Casison, individually, and d/b/a Breeze Restaurant Lounge, and d/b/a Breeze Lounge.[6]

Plaintiff alleges that, on May 7, 2016, "Defendants willfully intercepted or received the interstate communication of the Event,"[7] which was the "Saul Alvarez v. Amir Khan WBC World Middleweight Championship Fight Program, including all of the undercard or preliminary bouts."[8] "Defendants then transmitted, divulged and published said communication, or assisted in transmitting, divulging and publishing said communication, to patrons" in Defendants' establishment, the Breeze Lounge.[9] Plaintiff alleges that the satellite-originated transmission of the telecast was electronically coded or scrambled such that it could not be exhibited without Plaintiff's authorization and provision of electronic decoding capability, but Defendants misappropriated the transmission without obtaining Plaintiff's authorization or paying.[10]

After being unable to serve Defendant Jong Mi Park, Plaintiff voluntarily dismissed him from the action.[11] The remaining Defendants were served with process on June 12, 2019.[12] To date, no Defendant has appeared or answered.

---

[5] Dkt. No. 1 at 5, ¶ 8.
[6] Dkt. No. 1; see *Prostar v. Massachi*, 239 F.3d 669, 671 (5th Cir. 2001) (where the Fifth Circuit Court of Appeals held that the three-year statute of limitations from the Copyright Act applies to a claim under the Communications Act).
[7] *Id.* at 3, ¶ 11.
[8] *Id.* at 6, ¶ 14.
[9] *Id.*
[10] *Id.* at 5–6, ¶¶ 11–18.
[11] Dkt. No. 15.
[12] Dkt. Nos. 6–7. Plaintiff initially brought this action against an additional defendant, Jong Mi Park, but later dismissed him after Plaintiff failed to serve process. Dkt. No. 15.

On December 6, 2019, Plaintiff and Defendant Gerardo Arcellano Casison jointly filed a motion for agreed judgment.[13] Therein, the parties indicated that they reached a settlement agreement and requested that the Court enter an order memorializing their attached agreed judgment.[14] Also on December 6, 2019, Plaintiff filed (1) a motion for entry of default against Defendants JP Tao, LLC and Irene Mireles;[15] (2) a motion for default judgment against Defendants JP Tao, LLC and Irene Mireles;[16] (3) a motion for continuance of the initial pretrial and scheduling conference;[17] and (4) a motion for extension of time to file the joint discovery/case management plan.[18]

The Court granted Plaintiff's motion for entry of default but denied Plaintiff's motion for default judgment, reminding Plaintiff that default must first be entered against Defendants in order for Plaintiff to move for default judgment.[19] The Court instructed "Plaintiff to refile its motion for default judgment after the Clerk of the Court has entered default."[20] The Court also granted the motions for continuance and extension of time and cancelled the initial pretrial and scheduling conference, in light of the anticipated renewed motion for default judgment.[21]

The Clerk of the Court entered default against Defendants JP Tao, LLC and Irene Mireles on December 13, 2019.[22] On May 18, 2020, after Plaintiff did not file a renewed motion for default judgment, the Court ordered Plaintiff to do so by May 29, 2020.[23] Alternatively, the Court ordered Plaintiff to file a status report updating the Court on the status of the case by that

---

[13] Dkt. No. 22.
[14] *Id.*
[15] Dkt. No. 23.
[16] Dkt. No. 24.
[17] Dkt. No. 25.
[18] Dkt. No. 26.
[19] Dkt. No. 27 at 5.
[20] *Id.* at 4.
[21] *Id.*
[22] Dkt. Nos. 28–29.
[23] Dkt. No. 31.

same date.[24] On May 29, 2020, Plaintiff filed a status report[25] and notice of dismissal as to Defendant Irene Mireles.[26] On June 2, 2020, Plaintiff filed the instant renewed motion for default judgment against Defendant JP Tao, LLC.[27] The Court first turns to the notice of dismissal as to Defendant Irene Mireles.

### II.   NOTICE OF DISMISSAL

In the notice of dismissal, Plaintiff voluntarily dismisses the case without prejudice against Defendant Irene Mireles pursuant to Federal Rule of Civil Procedure ("Rule") 41(a)(1)(A)(i).[28] Rule 41(a)(1)(A)(i) provides that a plaintiff may dismiss an action without a court order by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."[29] Since Defendant Irene Mireles has not filed an answer or motion for summary judgment in this action, Plaintiff has effectively dismissed the case as to Defendant Irene Mireles and no further action by this Court is necessary. The Clerk of the Court is instructed to dismiss Defendant Irene Mireles from the case.

Defendants JP Tao, LLC and Gerardo Arcellano Casison remain. However, in light of Plaintiff's settlement with Defendant Casison,[30] only Defendant JP Tao, LLC remains for the purposes of default judgment. The Court now turns to Plaintiff's motion for default judgment against Defendant JP Tao, LLC, individually, and d/b/a Breeze Restaurant Lounge, and d/b/a Breeze Lounge (hereafter, "Defendant").[31]

---

[24] *Id.*
[25] Dkt. No. 32.
[26] Dkt. No. 33.
[27] Dkt. No. 34.
[28] Dkt. No. 33.
[29] FED. R. CIV. P. 41(a)(1)(A)(i).
[30] *See* Dkt. No. 22.
[31] Dkt. No. 34.

### III.   MOTION FOR DEFAULT JUDGMENT

#### a. Legal Standard

Obtaining a default judgment is a three-step process: "(1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment."[32] Once entry of default is made, "plaintiff may apply for a judgment based on such default. This is a *default judgment*."[33] Defendant has defaulted by failing to answer or otherwise appear in this case and entry of default has already been made against it.[34] The only remaining question is whether the third step—actual entry of default judgment—is appropriate.

Federal Rule of Civil Procedure 55(b) authorizes entry of default judgment with court approval, which is not lightly granted. Default judgments are a disfavored and drastic remedy, resorted to only in extreme situations such as an unresponsive party.[35] The Court will not grant default judgment automatically or as a matter of right, even where a defendant is in default.[36] Whether to grant default judgment is left to the sound discretion of the District Court.[37] Determining the propriety of default judgment is itself a three-step process.

First, the Court must determine whether the Plaintiff's claims are well-pled and substantively meritorious.[38] After all, a defendant's failure to answer or otherwise defend does not mean the particular legal claims levied are valid and merit judgment against the defendant.[39] When analyzing the merits of claims, the Court may assume the truth of all well-pled allegations in the Plaintiff's complaint because Defendant, by its default, admits well-pled allegations of

---

[32] *Bieler v. HP Debt Exch., LLC*, No. 3:13-CV-01609, 2013 WL 3283722, at *2 (N.D. Tex. June 28, 2013) (citing *N.Y. Life Ins. Co. v. Brown,* 84 F.3d 137, 141 (5th Cir. 1996)).
[33] *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).
[34] Dkt. No. 28.
[35] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).
[36] *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).
[37] *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).
[38] *See Wooten v. McDonald Transit Assocs.*, 788 F.3d 490, 498 (5th Cir. 2015).
[39] *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

fact.[40] But the Court will not hold the Defendant to admit facts that are not well-pled or to admit conclusions of law.[41]

Second, if Plaintiff states a well-pled claim for relief, the Court examines six factors to determine whether default judgment is procedurally proper:

> whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion.[42]

Third, if the plaintiff's claims are meritorious and default judgment appears appropriate, the Court must determine whether the requested relief is proper. Specifically, default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."[43] The Court will determine how to calculate damages. The general rule is "unliquidated damages normally are not awarded without an evidentiary hearing" but the exception is for when "the amount claimed is a liquidated sum or one capable of mathematical calculation."[44] When this exception applies, there is no need for an evidentiary hearing and the Court can enter default judgment on the briefing.

  b. *Analysis*

    i. Substantive Merit

Plaintiff alleges Defendant violated 47 U.S.C. §§ 553 or 605,[45] but moves for default judgment under section 605.[46] Section 553 provides "[n]o person shall intercept or receive or

---

[40] *Id.*
[41] *Id.*
[42] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).
[43] FED. R. CIV. P. 54(c); *see also Ditech Fin., L.L.C. v. Naumann*, 742 F. App'x 810, 813 (5th Cir. 2018) (holding that rendering relief in a default judgment differs from other kinds of judgment).
[44] *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (quoting *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).
[45] Dkt. No. 1 at 6, ¶ 19.
[46] Dkt. No. 34 at 5–7.

assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."[47] Section 605 provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."[48] Both sections are intended to provide for remedies and penalties to "protect the revenue of television cable companies from unauthorized reception of their transmissions,"[49] but Plaintiff cannot recover under both.[50] Section 553 applies to cable communications whereas section 605 applies to radio communications.[51] "Radio communication" in section 605 encompasses "satellite cable programming."[52] Section 605 is a strict liability statute, and Plaintiff need only show that Defendant exhibited its broadcast without Plaintiff's authorization.[53] There is no good faith defense and Defendant's intent is irrelevant except with respect to enhanced damages.[54]

Plaintiff pleads that it is a license company with the exclusive rights to license "the closed-circuit telecast of the May 7, 2016 Saul Alvarez v. Amir Khan WBC World Middleweight Championship Fight Program, including all of the undercard or preliminary bouts (collectively

---

[47] 47 U.S.C. § 553(a)(1).
[48] *Id.* § 605(a).
[49] *Prostar v. Massachi*, 239 F.3d 669, 673 (5th Cir. 2001) (quoting *Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc.*, 98 F. Supp. 2d 958, 961 (N.D. Ill. 2000)); *see also* H.R. REP. NO. 98-934, at 83, *reprinted in* 1984 U.S.C.C.A.N. 4655, 4720 ("The Committee is extremely concerned with a problem which is increasingly plaguing the cable industry—the theft of cable service. . . . Theft of service is depriving the cable industry of millions of dollars of revenue each year which it should otherwise be receiving.").
[50] *Joe Hand Promotions, Inc. v. Carter*, No. 18-CV-01105-RM-MEH, 2018 WL 3640713, at *3, 2018 U.S. Dist. LEXIS 129288, at *8 (D. Colo. Aug. 1, 2018), *report and recommendation adopted*, No. 18-CV-01105-RM-MEH, 2018 WL 6791095 (D. Colo. Oct. 1, 2018); *accord J & J Sports Prods., Inc. v. Cruisin1, Inc.*, No. 417CV11155TGBDRG, 2019 WL 1584538, at *4, 2019 U.S. Dist. LEXIS 63242, at *8 (E.D. Mich. Apr. 12, 2019).
[51] *J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 352–53 (5th Cir. 2014).
[52] 47 U.S.C. § 605(d)(6).
[53] *J&J Sports Prods. v. Little Napoli, Inc.*, No. H-13-1237, 2014 WL 3667903, at *2, 2014 U.S. Dist. LEXIS 99032, at *5 (S.D. Tex. July 22, 2014) (Miller, J.).
[54] *Joe Hand Promotions, Inc. v. Easterling*, No. 4:08 CV 1259, 2009 WL 1767579, at *4, 2009 U.S. Dist. LEXIS 52517, at *12 (N.D. Ohio June 22, 2009) (collecting cases).

the "Event")."[55] In order to safeguard against unauthorized exhibition of the Event, Plaintiff alleges that the satellite transmission was "electronically coded or 'scrambled.'"[56] Because the Event was not available to be viewed by the general public, only those contractually authorized by Plaintiff could decode the transmission and exhibit the Event.[57] Plaintiff adduces an affidavit of Thomas P. Riley, its attorney, consistent with the foregoing allegations.[58]

Plaintiff alleges that Defendant exhibited the Event at Defendant's bar in McAllen, Texas without Plaintiff's authorization and without paying the licensing fee on the date of the Event, May 7, 2016.[59] Plaintiff bolsters its allegations with an affidavit of an auditor who entered Defendant's bar on the night in question and "observed Max Kellerman interviewing Saul 'Canelo' Alvarez after he won the main event" on 5 televisions.[60] Plaintiff alleges that Defendant's exhibition of the Event was accomplished by unauthorized misappropriation or interception of Plaintiff's transmission.[61]

The Court finds that Plaintiff has established that Defendant exhibited the broadcast without Plaintiff's authorization in violation of 47 U.S.C. § 605.[62] As Plaintiff's claim is substantively meritorious, the Court turns to whether default judgment is procedurally proper.

    ii.  Procedural Properness

The Court examines the six factors to determine the propriety of default judgment. The record does not reveal any material issues of fact and the grounds for default are clearly established because, as detailed above, Plaintiff has established through its allegations and

---

[55] Dkt. No. 1 at 5, ¶ 8.
[56] *Id.* ¶ 11.
[57] *Id.* ¶¶ 9–11.
[58] *See* Dkt. No. 34-1 at 7, ¶¶ 5–6.
[59] Dkt. No. 1 at 3–4, ¶¶ 11–14.
[60] Dkt. No. 34-1 at 22.
[61] Dkt. No. 34 at 3–4, ¶¶ 10–11.
[62] *See Joe Hand Promotions, Inc. v. Lee*, No. CIV.A. H-11-2904, 2012 WL 1909348, at *3 (S.D. Tex. May 24, 2012) (Hoyt, J.) ("As a strict liability statute, to prove a violation, the plaintiff need only show that the Event was shown in the defendant's establishment without the plaintiff's authorization.").

evidence that its claims are substantively meritorious. Defendant, by its failure to answer or otherwise appear, cannot contest Plaintiff's well-pled allegations.[63] There is no substantial prejudice to Defendant, as the affidavit of service indicates that Defendant's agent was personally served with process and served by mail with the entry of default and has failed to respond to date.[64] There is no indication in the record that Defendant's default has been caused by a good faith mistake or excusable neglect, so default judgment is not unduly or prejudicially harsh. In light of the foregoing, the Court finds that it would not feel obliged to set aside a default judgment on Defendant's motion. For these reasons, default judgment as to Plaintiff's claim is procedurally proper against Defendant.

### iii. Appropriate Relief

Having found default judgment proper, the Court determines the appropriate relief.

#### 1. Compensatory Damages

A plaintiff may elect one of two methods of damages calculation.[65] In lieu of actual damages, "the party aggrieved may recover an award of statutory damages for each violation . . . involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just."[66] Plaintiff elects statutory damages and seeks the maximum.[67] Plaintiff contends that it would "be impossible to determine the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a result of [Defendant's] unlawful actions,"[68] and that Plaintiff "has been deprived of the 'value, benefits and profits derived' from the unauthorized broadcast of the Event to [Defendant's] Establishment and its patrons as well as the

---

[63] *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[64] Dkt. No. 6 at 2. Defendant's registered agent is Irene Mireles, who accepted service on Defendant's behalf. Irene Mireles has been dismissed in her individual capacity.
[65] *See* 47 U.S.C. § 605(e)(3)(C).
[66] 47 U.S.C. § 605(e)(3)(C)
[67] Dkt. No. 34 at 5–6, ¶¶ 13–15 (citing 47 U.S.C. § 605(e)(3)(C)(i)(II)).
[68] *Id.* ¶ 14.

value of 'business investment, business opportunities and goodwill.'"[69] Plaintiff's evidence indicates that Defendant's bar had a seating capacity of about 150 people, with anywhere from 60 to 66 patrons in the bar at the time Plaintiff exhibited the Event,[70] and Plaintiff would have charged $3,200.00 for Plaintiff's authorization to exhibit the Event at an establishment with a seating capacity of 101-200 people.[71]

United States District Courts throughout the country have used a variety of methods to calculate appropriate statutory damages: a "flat sum based on considerations of justice," an amount that will deter but that will not put a defendant out of business, counting the patrons that viewed the exhibition and multiplying the head count by $20 to $300 to account for the licensor's per-patron residential license fee, counting the television sets that exhibited the intercepted broadcast and multiplying the number by $5,000, and simply awarding default judgment in the amount of all damages requested by Plaintiff.[72] The Court must increase the statutory damages award above Plaintiff's actual damages or commercial establishments "would be encouraged to violate the law knowing the full extent of their liability would not exceed what they would have to pay for a license on the open market."[73]

---

[69] *Id.* at 6, ¶ 16 (quoting *Am. Television & Commc'ns Corp. v. Floken, Ltd.,* 629 F. Supp. 1462, 1466 (M.D. Fla. 1986)).
[70] Dkt. No. 34-1 at 23.
[71] Dkt. No. 34-1 at 7, ¶ 7 (Affidavit of Thomas P. Riley); *see id.* at 29 (Plaintiff's rate card).
[72] *J & J Sports Prods., Inc. v. Cruisin1, Inc.*, No. 417CV11155TGBDRG, 2019 WL 1584538, at *3, 2019 U.S. Dist. LEXIS 63242, at *6–7 (E.D. Mich. Apr. 12, 2019); *Kingvision Pay-Per-View Corp. v. Prime Time Saloon, Inc.*, No. 95 CV 1422 (DGT), 1996 U.S. Dist. LEXIS 23187, at *15 (E.D.N.Y. Sep. 30, 1996).
[73] *Joe Hand Promotions, Inc. v. Chios, Inc.*, No. 4:11-CV-2411, 2012 WL 3069935, at *5 (S.D. Tex. July 27, 2012) (quoting *Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1174 (S.D.N.Y. 1983)), *aff'd,* 544 F. App'x 444 (5th Cir. 2013).

The Court finds statutory damages in the amount of **$4,520.00** are appropriate. The award compensates Plaintiff $3,200.00 for its actual losses and awards an additional $1,320.00 to deter future violations.[74]

### i. Enhanced Damages

Plaintiff seeks enhanced damages. "In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation."[75] Thus, a Court must find (1) willfulness and (2) some commercial advantage or gain to award enhanced damages. Plaintiff points to aggravating factors it contends should urge the Court to grant enhanced damages, specifically that Plaintiff: acted willfully, acted for the purpose of commercial advantage or financial gain, broadcasted the Event on a big-screen television, broadcasted the Event on multiple televisions, advertised the Event to draw patrons, sold food and beverages while exhibiting the Event, and exhibited the Event in an urban area.[76] Plaintiff seeks $50,000 or five times the amount of statutory damages.[77]

As to the first element of enhanced damages, a "willful" act in the context of a civil statute is defined as "disregard for the governing statute and an indifference for its requirements."[78] In determining whether "the violation was committed willfully," courts have considered the following as indicia of willfulness: repeated violations, a sophisticated understanding of the satellite programming industry and the governing statutes, a defendant's

---

[74] The Court's $1,320.00 calculation of additional damages is based off of its multiplying of Plaintiff's $20.00 loss per bar patron by the largest number of patrons counted at Defendant's bar by the auditor: 66.
[75] 47 U.S.C. § 605(e)(3)(C)(ii).
[76] Dkt. No. 34 at 9–10, ¶¶ 23–24 (collecting cases).
[77] *Id.* at 10, ¶ 26.
[78] *J&J Sports Prods., Inc. v. Sw. Texas Entm't, Inc.*, No. DR-17-CV-045-AM, 2019 WL 2565255, at *4 (W.D. Tex. Mar. 27, 2019) (quoting *ON/TV of Chi. v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985)); *accord Entm't by J & J v. Al-Waha Enters.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002) .

failure to appear and defend against allegations of willful conduct, a defendant's substantial unlawful monetary gains, and other egregious circumstances.[79] "Given that the transmission was electronically coded or scrambled . . . there was no way the Defendan[t] could have innocently accessed the broadcast of the Event; [it] had to act specifically and willfully to illegally intercept the transmissions."[80] Defendant has not appeared to defend itself in this action despite personal service on its registered agent.[81] The Court finds Defendant willfully violated the statute.

As to the second element of enhanced damages, courts consider "such factors as the number of televisions on which defendants broadcast the Event, the food and beverages it sold to customers, as well as the cover charge, and whether it was broadcast in a relatively urban city where the broadcast would have more than a minimal impact."[82] Plaintiff does not allege that Defendant charged a cover or broadcasted the event in a relatively urban area. However, Plaintiff alleges that Defendant served food and drink and broadcasted the event on five televisions.[83] Thus, the Court finds that Defendant committed the violation for purposes of direct or indirect commercial advantage or gain.

Therefore, the Court awards enhanced damages. "Generally, it is reasonable to increase an actual or statutory damages award by a multiplier to penalize Defendants for willful acts."[84]

---

[79] *Joe Hand Promotions, Inc. v. Easterling*, No. 4:08CV1259, 2009 WL 1767579, at *6 n.2, 2009 U.S. Dist. LEXIS 52517, at *16–18 n.2 (N.D. Ohio June 22, 2009) (collecting cases).

[80] *Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F. Supp. 3d 747, 755 (S.D. Tex. 2014); *see also J & J Sports Prods., Inc. v. Garcia*, No. CIV. A. H-08-1675, 2009 WL 2567891, at *4, 2009 U.S. Dist. LEXIS 72233, at *12 (S.D. Tex. Aug. 14, 2009) (quoting *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999)) ("[S]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."). *But see J & J Sports Prods., Inc. v. Cruisin1, Inc.*, No. 417CV11155TGBDRG, 2019 WL 1584538, at *4, 2019 U.S. Dist. LEXIS 63242, at *9 (E.D. Mich. Apr. 12, 2019) (holding that the record could not exclude "technological happenstance or mistake").

[81] Dkt. No. 6.

[82] *Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F. Supp. 3d 747, 756 (S.D. Tex. 2014) (Harmon, J.) (footnotes omitted).

[83] Dkt. No. 34-1 at 22–23.

[84] *Joe Hand Promotions, Inc. v. Chios, Inc.*, No. 4:11-CV-2411, 2012 U.S. Dist. LEXIS 104979, at *13 (S.D. Tex. July 27, 2012).

This Court favors a multiplier of three to eight times the amount of statutory damages.[85] The Court will award triple the amount of statutory damages, specifically, **$13,560.00** in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii).

   ii. *Costs and Attorneys' Fees*

Because the Court has found Defendant liable in this action, Defendant must compensate Plaintiff for costs and reasonable attorneys' fees.[86] Plaintiff requests attorneys' fees in the amount of one-third of the recovery.[87] "An award equal to one-third of the recovery . . . is reasonable for cases such as this, and is frequently the measure of attorney's fees used in Communications Act cases by federal courts in Texas."[88] This Court has routinely granted one-third of the recovery as attorneys' fees.[89] Plaintiff demonstrates, via an affidavit of its attorney, that an award of one-third of the recovery is reasonable in this case because of the attorney's training and experience with cases of this type and the attorney's review of the applicable factors, specifically, those set forth in Texas Disciplinary Rule of Professional Conduct 1.04.[90] The Court finds Plaintiff's position meritorious and **AWARDS** one-third of the recovery, specifically, **$6.026.00.**

Although Plaintiff requests costs,[91] Plaintiff sets forth no allegations, argument, or evidence as to the appropriate amount.[92] The Court has been presented no basis upon which to determine Plaintiff's costs. Accordingly, the Court declines to award costs.

---

[85] *J&J Sports Prods. v. Rivera*, No. H-13-902, 2014 WL 3533472, at *3, 2014 U.S. Dist. LEXIS 95853, at *11 (S.D. Tex. July 14, 2014).
[86] 47 U.S.C. § 605(e)(3)(B)(iii).
[87] Dkt. No. 34 at 11.
[88] *J&J Sports Prods., Inc. v. Casita Guanajuato, Inc.*, No. A-13-CA-824-SS, 2014 WL 1092177, at *3, 2014 U.S. Dist. LEXIS 35601, at *8 (W.D. Tex. Mar. 19, 2014).
[89] *E.g.*, *J&J Sports Prods., Inc. v. Bustillos*, No. 4:08-cv-01069 (S.D. Tex. Apr. 8, 2009) (Harmon, J.), Dkt. No. 19 at 2 (awarding $20,000 for $60,000 recovery); *J&J Sports Prods., Inc. v. Alvarado*, No. 4:08-cv-00218 (S.D. Tex. May 29, 2008), Dkt. No. 10 at 2 (awarding $20,000 for $60,000 recovery); *J&J Sports Prods., Inc. v. Zavala*, No. 4:09-cv-01359 (S.D. Tex. Aug. 28, 2009) (Hoyt, J.), Dkt. No. 9 at 2 (awarding $20,000 for $60,000 recovery).
[90] Dkt. No. 34-1 at 31–36.
[91] Dkt. No. 34 at 11.
[92] *See* Dkt. No. 1 at 7; Dkt. No. 34 at 11.

Plaintiff also requests contingent attorneys' fees for appellate services.[93] The statute directs the Court to award full costs and reasonable attorneys' fees to the aggrieved party who prevails.[94] Therefore, the Court **AWARDS** costs and reasonable attorneys' fees according to the following:[95]

a) $10,000 in the event Defendant files a motion to vacate this opinion and order, a motion under Federal Rule of Civil Procedure 60 in this case, a motion for a new trial, a motion for reconsideration, or any other postjudgment pre-appeal motion that does not result in a reversal of this opinion and order or the Court's final judgment.

b) $15,000 in the event Defendant files an appeal to the United States Court of Appeals for the Fifth Circuit that does not result in a reversal of this opinion and order or the Court's final judgment.

c) $5,000 in the event Defendant files a motion for rehearing or reconsideration in the United States Court of Appeals for the Fifth Circuit that does not result in a reversal of this opinion and order or the Court's final judgment.

d) $15,000 in the event Plaintiff petitions for writ of certiorari to the Supreme Court of the United States on appeal of this case or responds to a petition for writ of certiorari to the Supreme Court of the United States on appeal of this case, if the Supreme Court's determination does not result in a reversal of this opinion and order or the Court's final judgment.

e) $30,000 in the event the Supreme Court of the United States grants a writ of certiorari on appeal of this case which does not ultimately result in a reversal of this opinion and order

---

[93] Dkt. No. 34 at 11.
[94] 47 U.S.C. § 605(e)(3)(B)(iii) ("The Court shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.").
[95] *See Norris v. Hartmarx Specialty Stores, Inc.*, 913 F.2d 253, 257 (5th Cir. 1990) ("A long and consistent line of Fifth Circuit precedent allows awards of attorneys' fees for both trial and appellate work.").

or the Court's final judgment, unless the grant of the writ of certiorari and the reversal are combined in one Supreme Court order or opinion decided without oral argument.

Plaintiff also requests postjudgment interest "at the highest lawful rate."[96] The Court finds this request reasonable and **AWARDS** postjudgment interest in accordance with 28 U.S.C. § 1961 at the interest rate in effect at the time of Plaintiff's request: 0.17%.[97] The interest shall compound annually but shall be computed daily to the date of full payment.[98]

### IV. HOLDING

For the foregoing reasons, the Court hereby **GRANTS** Plaintiff's motion for default judgment[99] and enters default judgment in favor of Plaintiff against Defendant JP Tao, LLC, individually, and d/b/a Breeze Restaurant Lounge, and d/b/a Breeze Lounge. The Court **AWARDS** amounts to Plaintiff collectible against Defendant as follows:

- $4,520.00 in statutory damages;
- $13,560.00 in enhanced damages;
- $6,026.00 in attorneys' fees;
- postjudgment interest at the rate of 0.17% on the total award, and
- contingent appellate costs and reasonable attorneys' fees, in the amounts set forth above.

A final judgment in accordance with Federal Rule of Civil Procedure 54 will follow, addressing the instant Order and the request for agreed judgment filed by Plaintiff and Defendant Casison.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 18th day of August, 2020.

_____
Micaela Alvarez
United States District Judge

---

[96] Dkt. No. 34 at 11.
[97] *See* UNITED STATES DISTRICT & BANKRUPTCY COURT, SOUTHERN DISTRICT OF TEXAS, POST-JUDGMENT INTEREST RATES - 2020, https://www.txs.uscourts.gov/page/post-judgment-interest-rates-2020 (last visited Aug. 18, 2020).
[98] 28 U.S.C. § 1961(b).
[99] Dkt. No. 34.